UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(FORT LAUDERDALE DIVISION)

In re                                                              CASE NO.  05-22912-BKC-RBR
                                                                   CHAPTER 11
CERTIFIED HR SERVICES COMPANY
f/k/a THE CURA GROUP, INC.,

    Debtor.
_____/

JAMES S. FELTMAN, Chapter 11                                       ADV. NO.
Trustee of CERTIFIED HR SERVICES
COMPANY f/k/a THE CURA GROUP,
INC. AND CERTIFIED SERVICES, INC.,

    Plaintiff,
vs.

PRAIRIE CAPITAL,

    Defendant.
_____/

**COMPLAINT (A) TO AVOID AND RECOVER PREFERENTIAL AND FRAUDULENT TRANSFERS, OR, (B) IN THE ALTERNATIVE,
<u>TO RECOVER TRANSFERS TO SUBSEQUENT TRANFEREES</u>**

The Plaintiff, James S. Feltman, the duly appointed and acting Chapter 11 trustee (the "Plaintiff" or "Trustee") for the estate of Certified HR Services Company, f/k/a The Cura Group (the "Debtor") together with the substantively consolidated assets and liabilities of Certified Services, Inc. ("CSI") (collectively with the Debtor hereinafter referred to as the "Consolidated Estate"), files this Adversary Complaint against PRAIRIE CAPITAL (the "Defendant"), (i) to avoid and recover transfers to the Defendant pursuant to Sections 544 & 550 of Title 11 of the United States Code ("Bankruptcy Code") and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Rules"), or (ii) in the alternative, to recover transfers from the Defendant as a mediate or immediate transferee pursuant to Section 550 of the Bankruptcy Code and Section 7001 of the Rules, and states as follows:

## PARTIES, JURISDICTION AND VENUE

1. On May 12, 2005 (the "Petition Date"), Certified HR Services Company, f/k/a The Cura Group, Inc., (the "Debtor" or "Cura") filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code").

2. The Debtor, a Florida corporation with its principal place of business in Ft. Lauderdale, Florida, is a wholly owned subsidiary of CSI, a Nevada corporation formed on September 15, 1999.

3. Upon motions for the appointment of a trustee, by agreed order the bankruptcy court (the "Bankruptcy Court") overseeing the above-styled Chapter 11 proceeding ordered the appointment of a trustee.

4. Thereafter, the Office of the United States Trustee appointed James S. Feltman ("Feltman" or the "Trustee") as the Chapter 11 trustee, which appointment was confirmed by subsequent order of the Bankruptcy Court. Feltman is the duly appointed and acting Chapter 11 trustee of the Debtor's estate.

5. On May 10, 2006 (the "Sub Con Effective Date"), the Bankruptcy Court entered an order pursuant to which the assets and liabilities of CSI were substantively consolidated with and into the Debtor's estate.

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F) and (O).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## FACTS COMMON TO ALL COUNTS

8. At all times material to this action, CSI operated as a public company whose stock was registered with the United States Securities and Exchange Commission (the "SEC").

9. The Debtor operated under the name "The Cura Group" and, thereafter, under the name "Certified HR Services."

10. The Debtor was in the PEO business. A PEO generally provides services to its clients and its clients' employees, whereby the PEO becomes a co-employer of the clients' worksite employees. Under this arrangement, employment-related liabilities are contractually allocated between the PEO and the client. Among other responsibilities, the PEO assumes responsibility for and manages the risks associated with workers compensation insurance for worksite employees. Specifically, the Debtor operated and, for a period of time during the Chapter 11 proceeding through the Trustee, continued to operate as a PEO.

11. Since 2001, CSI was controlled by Midwest Merger Management, LLC, a Kentucky limited liability company ("Midwest"), which was described by CSI in its filings with the Securities and Exchange Commission as its "principal and controlling shareholder." Since 2002, the Debtor was a wholly-owned subsidiary of CSI.

12. Between May, 2001 and May, 2006, CSI and the Debtor transferred in excess of $108 million to Midwest (collectively, the "Midwest Transfers").

13. Between May, 2001 and May, 2005, CSI, the Debtor, and Midwest collectively transferred in excess of $25 million to Brentwood (collectively, the "Brentwood Transfers"). The funds transferred by Midwest to Brentwood came from the Midwest Transfers received from the Debtor and CSI.

14. The Midwest Transfers and Brentwood Transfers essentially consisted of the majority, if not all, of the monies generated by CSI and the Debtor in the course of their operations.

15. Midwest and Brentwood did not exercise dominion and control over the funds constituting the Midwest Transfers and the Brentwood Transfers, respectively, received from CSI and the Debtor and as such acted as conduits for the further transfer of such funds by CSI and the Debtor to others, including the Defendant.

16. Alternatively, Midwest and Brentwood exercised dominion and control over the

funds constituting the Midwest Transfers and the Brentwood Transfers received from the Debtor and/or CSI, determining which third parties, if any, were to be paid and how much they were to be paid.

17. From the funds constituting the Midwest Transfers, Midwest effectuated transfers to various third parties, including the Defendant, for which neither CSI, the Debtor, nor Midwest, as applicable, received value.

18. From the funds constituting the Brentwood Transfers, Brentwood effectuated transfers to various third parties, including the Defendant, for which neither CSI, the Debtor, nor Brentwood, as applicable, received value.

## **AVOIDABLE TRANSFERS TO MIDWEST, BRENTWOOD, AND DEFENDANT**

19. Within four years prior to the Petition Date and/or the Sub Con Effective Date, the Debtor and CSI, respectively, effectuated the Midwest Transfers and the Brentwood Transfers, pursuant to which in excess of $112 million was transferred from the Debtor and CSI to Midwest and Brentwood collectively.

20. The Trustee has filed a separate action against each of Midwest (the "Midwest Lawsuit") and Brentwood (the "Brentwood Lawsuit") in the United States Bankruptcy Court for the Southern District of Florida in order to avoid the Midwest Transfers to Midwest and the Brentwood Transfers to Brentwood (collectively, the "Initial Transfers"), as either preferential and/or fraudulent transfers pursuant to both the Bankruptcy Code and/or applicable law, including specifically Florida law.

21. Within four (4) years immediately prior to the Petition Date, the Debtor transferred to the Defendant a total of $121,992.71 (collectively, the "Debtor Four Year Transfers").

22. From and after receipt of the Midwest Transfers, Midwest transferred to the Defendant an amount equal to $121,992.71 (the "Midwest Subsequent Transfers").

## COUNT I
### Avoidance and Recovery of Fraudulent Transfers (Debtor Four Year Transfers) Under 11 U.S.C. § 544, Florida Statute 726.106(1), and/or Otherwise Applicable Law

23. Plaintiff repeats and realleges Paragraphs 1 through 22 as if fully set forth herein.

24. The Debtor Four Year Transfers constituted a transfer of an interest in property of the Debtor made to the Defendant:

        a. Within four years prior to the Petition Date;

        b. For less than reasonably equivalent value in exchange for such transfers; and

        c. At a time when the Debtor was insolvent or became insolvent as a result of the transfers.

25. At the time of the Debtor Four Year Transfers, or thereafter, the Debtor had at least one creditor that could have avoided the Debtor Four Year Transfers.

26. By reason of the foregoing, the Debtor Four Year Transfers to the Defendant are avoidable pursuant to 11 U.S.C. § 544, Florida Statutes, Section 726.106(1), and/or otherwise applicable law. As a result, Plaintiff may recover the amount or value of the Four Year Transfers from the Defendant pursuant to 11 U.S.C. § 550.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against the Defendant that:

    (a) avoids the Debtor Four Year Transfers to the Defendant in the amount of $121,992.71, pursuant to 11 U.S.C. § 544, Florida Statutes, Section 726.106(1), and/or otherwise applicable law;

    (b) awards to the Trustee the amount or value of the Debtor Four Year Transfers plus interest, costs and reasonable attorneys' fees, if applicable, pursuant to Section 550 of the Bankruptcy Code;

    (c) disallows any claim that the Defendant may have against the Debtor and/or CSI until such time as the Defendant makes payment on the fraudulent transfers asserted

herein as provided in 11 U.S.C. § 502(d); and

   (d) awards any additional relief this Court deems is just and proper.

## COUNT II
### Avoidance and Recovery of Preferential Transfers (Debtor Four Year Transfers) Under 11 U.S.C. § 544, Florida Statute 726.105(1)(a) and/or Otherwise Applicable Law

27. The Plaintiff repeats and realleges Paragraphs 1 through 22 as if fully set forth herein.

28. The Debtor Four Year Transfers constituted a transfer of an interest in property of the Debtor made to the Defendant:

   a. Within four years prior to the Petition Date; and

   b. With actual intent to hinder or delay any creditor of the Debtor.

29. At the time of the Debtor Four Year Transfers, or thereafter, the Debtor had at least one creditor that could have avoided the Debtor Four Year Transfers.

30. By reason of the foregoing, the Debtor Four Year Transfers to the Defendant are avoidable pursuant to 11 U.S.C. § 544, Florida Statutes, Section 726.105(1)(a), and/or otherwise applicable law.  As a result, Plaintiff may recover the amount or value of the Debtor Four Year Transfers from the Defendant pursuant to 11 U.S.C. § 550.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against the Defendant that:

   (a) avoids the Debtor Four Year Transfers to the Defendant in the amount of $121,992.71, pursuant to 11 U.S.C. § 544, Florida Statutes, Section 726.105(1)(a), and/or otherwise applicable law;

   (b) awards to the Trustee the amount or value of the Debtor Four Year Transfers plus interest, costs and reasonable attorneys' fees, if applicable, pursuant to Section 550 of the Bankruptcy Code;

(c) disallows any claim that the Defendant may have against the Debtor and/or CSI until such time as the Defendant makes payment on the fraudulent transfers asserted herein as provided in 11 U.S.C. § 502(d); and

(d) awards any additional relief this Court deems is just and proper.

## COUNT III
**Avoidance and Recovery of Preferential Transfers (Debtor Four Year Transfers) Under 11 U.S.C. § 544, Florida Statute 726.105(1)(b), and/or Otherwise Applicable Law**

31. Plaintiff repeats and realleges Paragraphs 1 through 22 as if fully set forth herein.

32. The Debtor Four Year Transfers constituted a transfer of an interest in property of the Debtor made to the Defendant:

   a. Within four years prior to the Petition Date;

   b. For less than reasonably equivalent value in exchange for such transfers; and

   c. At a time when the Debtor was either

   (i) engaged or about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or

   (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

33. At the time of the Debtor Four Year Transfers, or thereafter, the Debtor had at least one creditor that could have avoided the Debtor Four Year Transfers.

34. By reason of the foregoing, the Debtor Four Year Transfers to the Defendant are avoidable pursuant to 11 U.S.C. § 544, Florida Statutes, Section 726.105(1)(b), and/or otherwise applicable law. As a result, Plaintiff may recover the amount or value of the Debtor Four Year Transfers from the Defendant pursuant to 11 U.S.C. § 550.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against the Defendant that:

(a) avoids the Debtor Four Year Transfers to the Defendant in the amount of $121,992.71, pursuant to 11 U.S.C. § 544, Florida Statutes, Section 726.105(1)(b), and/or otherwise applicable law;

(b) awards to the Trustee the amount or value of the Debtor Four Year Transfers plus interest, costs and reasonable attorneys' fees, if applicable, pursuant to Section 550 of the Bankruptcy Code;

(c) disallows any claim that the Defendant may have against the Debtor and/or CSI until such time as the Defendant makes payment on the fraudulent transfers asserted herein as provided in 11 U.S.C. § 502(d); and

(d) awards any additional relief this Court deems is just and proper.

## ALTERNATIVE COUNT IV
## RECOVERY OF PREFERENTIAL AND FRAUDULENT TRANSFERS UNDER 11 U.S.C. § 550 (MIDWEST SUBSEQUENT TRANSFERS)

35. Plaintiff repeats and realleges Paragraphs 1 through 22 as if fully set forth herein.

36. The Debtor and/or CSI effectuated the Midwest Transfers to Midwest.

37. The Midwest Transfers have been, will be or are subject to being avoided by the United States Bankruptcy Court for the Southern District of Florida in the Midwest Lawsuit.

38. The Defendant is a mediate or immediate transferee of the Midwest Transfers in the total amount of $121,992.71, previously defined as the Midwest Subsequent Transfers.

39. The Defendant did not take the Midwest Subsequent Transfers for value or in good faith.

40. As a result, Plaintiff may recover the amount or value of the Midwest Subsequent Transfers from the Defendant pursuant to 11 U.S.C. § 550.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against the Defendant that:

(a) avoids the Midwest Subsequent Transfers to the Defendant;

(b) awards to the Trustee the amount or value of the Midwest Subsequent Transfers made to the Defendant plus interest, costs and reasonable attorneys' fees, if applicable, pursuant to Section 550 of the Bankruptcy Code;

(c) disallows any claim that the Defendant may have against the Debtor and/or CSI until such time as the Defendant makes payment on the Midwest Subsequent Transfers asserted herein as provided in 11 U.S.C. § 502(d); and

(d) awards any additional relief this Court deems is just and proper.

Respectfully submitted this 9th day of May, 2007.

**I hereby certify that I am admitted to the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1)**

GENOVESE JOBLOVE & BATTISTA, P.A.
*Attorneys for the Chapter 11 Trustee*
Bank of America Tower
100 S.E. Second Street, Suite 4400
Miami, Florida 33131
Tel.: (305) 349-2300
Fax.: (305) 349-2310

By:     /s/  Paul J. Battista
    Paul J. Battista, Esq. FBN 884162
    Scott A. Underwood, Esq. FBN 730041
    Heather L. Yonke, Esq. FBN 013192