UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| CERTIFIED HR SERVICES COMPANY f/k/a THE CURA GROUP, INC., | Case No. 05-22912-BKC-RBR |
| Debtor._____/ | |
| JAMES S. FELTMAN, Chapter 11 Trustee of CERTIFIED HR SERVICES COMPANY f/k/a THE CURA GROUP, INC. AND CERTIFIED SERVICES, INC., | Adv. No. 07-ap-1336-RBR |
| Plaintiff, | |
| vs. | |
| PRAIRIE CAPITAL, | |
| Defendant._____/ | |

## MOTION TO DISMISS

Defendant Prairie Capital Mezzanine Fund, L.P. ("Prairie") by and through undersigned counsel, under Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6), brings this motion to dismiss the above-referenced adversary proceeding brought by James S. Feltman, Chapter 11 Trustee ("Trustee") of Certified HR Services Company f/k/a The Cura Group (the "Debtor") and the Debtor's corporate parent, Certified Services, Inc. ("CSI").

The Trustee's complaint alleges that a payment of $121,992.71 the ("Payment") to Prairie was an avoidable transfer. The Trustee's allegations are incomplete and incorrect, and therefore fail to state an actionable claim, for least two reasons. *First*, the Payment was made by a non-debtor, American HR Holdings, Inc. ("American HR"), and is therefore not recoverable by the

857816-2

consolidated bankruptcy estate.  *Second*, the Payment was made in good faith and for reasonable value.

In support of the dismissal of the Trustee's complaint, Prairie relies upon Affidavit of William N. Warren dated April 15, 2004 (the "Warren Affidavit")[1] attached hereto as Exhibit 1. Prairie states as follows:

## BACKGROUND

The $121,992.71 Payment at issue in this adversary proceeding paid part interest that had accrued between April 25, 2005 and July 28, 2005 under promissory notes assumed by one of the Debtors, Certified Services, Inc. ("CSI"), and two of its non-debtor affiliates, The Cura Group III and American HR.

The promissory notes are dated August 21, 2002 and evidence obligations to Prairie and its affiliated investors in the original amount of $8 million, accruing interest at an annual percentage rate of 6.5% (the "Promissory Notes").  [Promissory Notes, Warren Affidavit, Exhibit M.][2]

The Promissory Notes were drawn in partial consideration for the August 31, 2002 sale by Prairie to BACE International Corporation ("BACE") of the stock of ASR Acquisition, Inc. ("ASR").  [Stock Purchase Agreement between Prairie and BACE dated August 31, 2002 (the "BACE Agreement"), Warren Affidavit, Exhibit E.]  ASR owned five affiliated companies engaged in the "Professional Employer Organization" or "PEO" business.[3]  [Addendum (as defined below), p. 2, Art. I, def. "Shares," § i, Warren Affidavit, Exhibit E.]  As the Trustee has

---

[1] References to the exhibits to the Warren Affidavit shall be cited as "Warren Affidavit, Exhibit ___."
[2] The Promissory Notes have already been the subject of extensive litigation in Texas state court.  *See Prairie Capital Mezzanine Fund, L.P., et al., v. BACE International Corporation, et al.*, Case No. 67-202574-03 (District Court of Terrant County, Texas 2003)
[3] The five "American Staff Resources" companies owned by ASR were: American Staff Resources Corp. I, American Staff Resources Corp. III, American Staff Resources Corp. V, American Staff Resources Corp. VI and American Staff Resources Corp. NS.

2

857816-2

noted, PEOs perform human resources management for their clients on an independent contractor basis, including payroll, insurance and risk management functions. [Trustee's Complaint ¶ 10.]

The BACE Purchase Agreement expressly provides that, absent Prairie's consent, BACE could not "assign, delegate or otherwise transfer any of its rights or obligations, in whole or in part" to any entity not controlled by BACE. BACE Agreement § 13.

On June 27, 2003, BACE nevertheless sold its PEO business, including ASR, without Prairie's knowledge or consent, to CSI and an affiliated non-debtor, Cura III. [Addendum to the Stock Purchase Agreement between BACE International and Certified Services, Inc. and The CURA Group III, Inc. dated June 27, 2003 (the "Addendum"), Warren Affidavit, Exhibit W.] On June 30, 2003, American HR assumed ownership of ASR as well as the obligations under the Promissory Notes. [CSI's Form 8-K, filed with the U.S. Securities and Exchange Commission on July 1, 2003, Warren Affidavit, Exhibit X.]

One condition of payment to BACE for the sale of ASR was Prairie's agreement to meet with Danny Pixler (the president of American HR) concerning "the re-negotiation of the obligation" under the Promissory Notes. Addendum § 3.7(a).

On July 22, 2003, representatives of Prairie met with Mr. Pixler. [Deposition of Danny L. Pixler of, p 58, ln. 8-13, Warren Affidavit, Exibit I.] At that meeting, Mr. Pixler agreed to send Prairie the interest accruing under the Promissory Notes after April 24, 2003 (the date of BACE's last payment under the Promissory Notes), in exchange for the extension of the payment date of the Promissory Notes to October 1, 2003. [*See* Letter from Pixler to King dated September 24, 2003, Warren Affidavit, Exhibit DD.]

3

Less than a week later, on July 28, 2003, Prairie submitted an invoice for the interest due from April 25 to July 28, 2003, in the amount of $121,992.71. [Invoice dated July 28, 2003, <u>Warren Affidavit, Exhibit BB</u>.] Three days later, on or about July 31, 2003, American HR, through Midwest Merger Management, LLC, paid Prairie the amount of interest due, $121,992.71. [Trustee's Complaint ¶ 10.]

On August 22, 2003, American HR sent Prairie a letter confirming the payment and stating that it a "good faith deposit" in exchange for Prairie's extension of the payment date under the Promissory Notes to October 1, 2003. [Letter from Pixler to King dated August 22, 2003, <u>Warrant Affidavit, Exhibit CC</u>.]

On September 24, 2003, American HR disclosed to Prairie that it was the actual owner of ASR, and that it had "approved a good faith deposit of $121,992.71 to Prairie in exchange for it's [sic] extension of the BACE indebtedness to October 1, 2003[.]" [Letter from Pixler to King dated September 24, 2003, <u>Warren Affidavit, Exhibit DD</u>.]

On May 12, 2005, the Debtor filed a voluntary petition for relief under chapter 11, Title 11 of the United States Code ("Bankruptcy Code"). On September 2, 2005, CSI transferred its PEO business, including American HR, to O2HR. The Trustee filed a complaint to avoid the transaction and substantively consolidate O2HR with the Debtor's bankruptcy estate (the "Sub Con Litigation"), but subsequently settled the Sub Con Litigation and obtained court approval of the sale to O2HR, in exchange for, among other consideration, the substantive consolidation of CSI with the Debtor, effective May 10, 2006, and the Trustee's receipt of a promissory note in the amount of $10,290,000. [See, Case No. 05-22912-RBR, C.P. No. 407, Exhibit A.]

On May 9, 2007, the Trustee filed the above-captioned adversary proceeding against Prairie.

## ARGUMENT

Federal Rule of Bankruptcy Procedure 7012(b), which incorporates Federal Rule of Civil Procedure 12(b)(6) by reference, provides that a pleading shall be dismissed if it fails to state a claim on which relief may be granted. Civil Rule 12(b) also states that if such a defense is raised by motion, and the motion presents matters outside the pleading, the motion shall be treated as a motion for summary judgment under Civil Rule 56 (as made applicable by Bankruptcy Rule 7056).

Summary judgment is appropriate in this case because the admissible evidence does not support the Trustee's claim, leaving no issues of material fact, and Prairie is entitled to judgment as a matter of law.

Prairie's counsel has asserted a claim in the above-captioned bankruptcy case and, in conjunction with its claim, provided the Trustee with numerous documents and materials, including those relied on in this motion, more than a year ago, in July 2006.

Once sufficient time for discovery has passed, the party who bears the burden of proof at trial (in this case, the Trustee) must "make a showing sufficient to establish the existence of an element essential to that party's case" to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party in opposition to the motion may not rest upon the mere allegations or denials of the pleadings. When the party opposing summary judgment fails to raise an issue of material fact, summary judgment should be granted. *Id*.

### 1. The Payment Was Not Made by CSI or the Debtor

The correspondence from American HR on August 22 and September 24, 2003 states that American HR had approved the Payment. This contradicts the Trustee's allegations that the Payment was made either directly or indirectly by the Debtor or CSI.

857816-2

The Trustee correctly observes that payments for the operations of CSI and its subsidiaries were channeled through Midwest. Standing alone, this fact does not make the transfers avoidable because the Trustee has no standing to recover payments by American HR to Midwest or subsequent payments by Midwest to Prairie. American HR is not a debtor, and the Trustee cannot assert avoidance powers or otherwise act on its behalf. *See Kreisler v. Goldberg*, 478 F.3d 209 (4th Cir. 2007). The Trustee's settlement of the Sub Con litigation, which recognizes the sale of American HR to O2HR as well as American HR's non-debtor status, underscores this point.

The evidence indicates that American HR, and not the Debtor, made the Payment through Midwest. The Trustee's assertion that the Debtor or CSI made the Payment is incorrect, unsupportable and subject to dismissal.

Even if the Debtor or CSI had made the Payment, the Trustee's complaint would still fail to state a claim. The undisputed evidence shows that the Payment was exchanged for reasonably equivalent value, and was made in good faith.

**2.    The Payment Was Exchanged for Reasonably Equivalent Value**

Counts I and III of the Trustee's complaint require the Trustee to demonstrate that the Payment was made for less than reasonably equivalent value. *See* Fla. Stat. § 726.105(1)(b) and 106(1). In this case, the undisputed facts demonstrate that the Payment was made in exchange for reasonably equivalent value for a number of distinct reasons.

    **A.    The Payment Satisfied an Antecedent Obligation**

Florida law expressly recognizes that the payment of an antecedent debt constitutes reasonably equivalent value:

> Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied[.]

6

857816-2

Fla. Stat. § 726.104. In this case, the Payment made on July 31, 2003 satisfied the debt due for interest accruing from April 25 to July 28, 2003. The Payment corresponds dollar-for-dollar with the amount of interest due under Promissory Notes assumed by American HR, as stated in the invoice dated July 28, 2003. Because the Payment satisfied an antecedent debt, by definition it constituted equivalent value and was not a fraudulent transfer. *See Bakst v. Levenson (In re Goldberg)*, 229 B.R. 877, 884 (Bankr. S.D. Fla. 1998).

### B.    The Payment Was Exchanged for an Extension of the Promissory Note

As Mr. Pixler acknowledged in letters dated August 22 and September 24, 2005 and in his deposition taken on February 25, 2004, the Payment was made in exchange for an extension of the approximately $8 million due under the Promissory Notes to October 1, 2003. [See Deposition of Danny L. Pixler on February 25, 2004 at p. 58, ln. 8-13.] Voluntary forbearance in collecting a debt, such as by extension of time for repayment, constitutes reasonably equivalent value. *See, e.g., Finch v. Building Material Distributors (In re Ward)*, 36 B.R. 794 (Bankr. S.D. 1984).

### C.    The Payment Resulted in Prairie's Consent to the Sale

The Payment was also partial consideration for Prairie's consent to BACE's sale of ASR. The BACE Agreement expressly provides that it may not be assigned to any party other than a BACE-controlled entity without Prairie's consent. BACE Agreement § 13. Under the BACE Agreement, Prairie had the right to block BACE's sale of the business. By agreeing to accept the Payment from American HR under the Promissory Notes, Prairie effectively consented to BACE's sale of ASR and its transfer to American HR. Prairie's consent to the sale and transfer of ASR constituted additional reasonably equivalent value.

3. **The Payment Was Taken in Good Faith**

Count II of the Trustee's complaint requires the Trustee to prove that the Payment was made with actual intent to hinder or delay any creditor of the Debtor. *See* Fla. Stat. § 726.105(1)(a) and 106(1). Even if the Trustee were somehow able to make such a showing, his claim would nevertheless fail because Prairie "took in good faith and for a reasonably equivalent value." Fla. Stat. § 726.109(1).

As noted above, Prairie provided reasonably equivalent value for the Payment. Furthermore, by Mr. Pixler's own admission, in the letters dated August 22 and September 24, 2003, the Payment was intended by the parties to be a "good faith deposit." This evidence refutes the Trustee's allegations. This case arises from Prairie's efforts to obtain payment on the Promissory Notes assumed by CSI, The Cura Group III and American HR. The evidence surrounding the Payment itself demonstrates that the Trustee is unable to carry his burden of proof, and that Count II should therefore be dismissed.

4. **Count IV Should Also Be Dismissed**

The Trustee's allegations in Count IV depend on the establishment of liability under one of the prior counts in the complaint. Because, as explained above, Counts I, II and III fail to state a claim and should be dismissed, the associated claim in Count IV should also be dismissed.

**WHEREFORE**, Prairie Capital Mezzanine Fund, L.P. requests that the Court dismiss this adversary proceeding with prejudice award such other relief as it deems just and appropriate.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the following was served upon Heather Yonke, Esq., Paul J. Battista, Esq, Genovese Joblove & Battista, counsel for James S. Feltman, Chapter 11 Trustee, 100 SE 2 Street, Suite 4400, Miami, FL 33131 this 28th day of September, 2007.

**CERTIFICATION PURSUANT TO LOCAL RULE 9011-4(B):**

     I certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

Dated:  September 28, 2007

                                Respectfully submitted:

                                BERGER SINGERMAN

                                  /s/ Jordi Guso
                                Jordi Guso
                                Florida Bar No. 0863580
                                200 South Biscayne Boulevard, Suite 1000
                                Miami, Florida  33131
                                Telephone: (305) 755-9500
                                Fax: (305) 714-4340

                                  – and –

                                GODFREY & KAHN, S.C.
                                Douglas M. Poland
                                WI Bar No. 1055189
                                Christopher Stroebel
                                WI Bar No. 1035182
                                Godfrey & Kahn, S.C.
                                One East Main Street, Suite 500
                                P.O. Box 2719
                                Madison, WI 57301-2719
                                Phone:   (608) 257-3911
                                Fax:       (608) 257-0609

                                CO-COUNSEL FOR PRAIRIE CAPITAL