ADDENDUM TO THE

STOCK PURCHASE AGREEMENT

between

BACE INTERNATIONAL, INC

And

CERTIFIED SERVICES, INC.  &  THE CURA GROUP III, INC.

Dated as of June 27, 2003



EXHIBIT

4

2/25/04



EXHIBIT

ω

CURA 0027

ADDENDUM TO THE STOCK PURCHASE AGREEMENT

THIS ADDENDUM TO THE STOCK PURCHASE AGREEMENT (the "Addendum") is made as of the 27th day of June, 2003, by and between BACE International, Inc., a North Carolina corporation, ( the "Seller") and Certified Services, Inc., ("CSRV") a Nevada corporation and The Cura Group III, Inc., a Florida corporation (collectively, the "Purchaser"). Certain capitalized terms used herein are defined in Article I.

WITNESSETH:

WHEREAS, the Seller is in the business of providing professional employee, staffing, payroll and other services (the "PEO Operations");

WHEREAS, the Purchaser assisted the Seller in obtaining a Loan Agreement in the amount of $3,860,000 on August 30, 2002 in order to extend its Workers' Compensation insurance policy for an additional thirty days ("Loan 1");

WHEREAS, the Purchaser again assisted the Seller in obtaining a Loan Agreement in the amount of $3,860,000 on September 30, 2002 in order to extend its Workers' Compensation insurance policy for an additional thirty days ("Loan 2");

WHEREAS, the Seller and the Purchaser executed a Stock Purchase Agreement on October 31, 2002 (the "Purchase Agreement") pursuant to which the Purchaser would acquire all of the Seller's issued and outstanding capital stock (the "Shares") of its subsidiaries and affiliates engaged in PEO Operations, pending the completion of a due diligence review and determination of a fair valuation of the Shares (the "Transaction");

WHEREAS, the Seller and the Purchaser also executed a Co-Management Agreement on October 31, 2002, pursuant to which, and in connection with the Purchase Agreement, the Purchaser provided the Seller's PEO Operations with Workers' Compensation coverage through the Purchaser's insurance facility;

WHEREAS, The Cura Group III, Inc. ("Cura III") merged into and with The Cura Group II, Inc. ("Cura II") effective May 1, 2003; by virtue of the merger between Cura II and Cura III, Cura II has assumed all of Cura III's obligations under the Purchase Agreement;

WHEREAS, the Purchaser and the Seller have determined the fair value of the Purchase Price of the Shares to be approximately Seventeen Million Three Hundred Thousand Dollars ($17,300,000), payment of the Purchase price is subject to the delivery by the Seller of certain material information and consents as set forth herein;

WHEREAS, the Purchase Price is comprised in part of securities in CSRV, the Seller and the Purchaser wish to modify the Purchase Agreement to include the Purchaser's parent, CSRV as to the Note Consideration, Stock Consideration, the Option,

the Consulting Agreement and the Marketing Agreement.  Purchaser and Seller additionally agree that Purchaser's right to acquire the Shares may be assigned to CSRV.

**WHEREAS**, the Seller and the Purchaser wish to modify the Purchase Agreement to include the Seller's affiliate, ASR Acquisition, Inc. a Delaware corporation and sole shareholder of American Staff Resources Corporation;

**WHEREAS**, the Seller and the Purchaser wish to amend and supplement the terms of the Purchase Agreement pursuant to the terms and conditions of this Addendum;

**NOW, THEREFORE**, in consideration of the foregoing and the mutual covenants, agreements and warranties herein contained, and for good and valuable consideration, the sufficiency of which are hereby acknowledged, the parties agree as follows:

## ARTICLE I
## DEFINITIONS

The terms set forth in the Purchase Agreement shall have the same meaning in this Addendum except as specifically set forth herein.

"Shares" means all of the issued and outstanding shares of the following:

i.    ASR Acquisition, Inc.; and its subsidiaries American Staff Resources Corporation, American Staff Resources Corp. I, American Staff Resources Corporation II, American Staff Resources Corporation III, American Staff Resources Corporation IV, and American Staff Resources Corporation NS;

ii.   Meridian Investment & Management, Inc.;

iii.  ABP II, Inc.;

iv.   ABP III, Inc.;

v.    ABP IV, Inc.;

vi.   StaffAmerica of Delaware, Inc.;

## ARTICLE II

## PREVALENCE

2.1  Enforceability of the Purchase Agreement.  This Addendum is intended only to supplement the terms and conditions of the Purchase Agreement.  None of the terms and conditions contained herein are intended to nor shall have the effect of relieving any of the parties of their respective obligations as set forth within the Purchase Agreement.

2

2.2  Addendum to Prevail.  Notwithstanding anything to the contrary contained within Section 2.1 herein or any other agreement, any inconsistencies between the terms and conditions of this Addendum and any other agreement, including the Purchase Agreement, shall be resolved in favor of this Addendum.

2.3

# ARTICLE III

## SALE AND PURCHASE OF SHARES

3.1  Purchase of Shares.  Subject to the terms and conditions of this Agreement, at the Closing the Seller shall sell, assign, convey, transfer and deliver to Purchaser, and Purchaser shall purchase, acquire and take assignment and delivery of, all of the Seller's right, title and interest in and to the Shares.

3.2  Closing Date.  The Closing shall take place on June 27, 2003 at the offices of the Seller at 6000 Fairview, Suite 1550, Charlotte, North Carolina, upon the execution of this Addendum.

3.3  Purchase Price.  At the Closing, as consideration for the transfer of the Shares, the Purchase Price shall be delivered to the Seller as follows:

(i) the assumption by the Purchaser of the Seller's acquisition debt currently estimated at Eight Million Dollars ($8,000,000) (the "Debt Assumption");

(ii) the assumption of the Seller's obligations in Loan 1 and Loan 2 in an amount currently estimated at Four Million Eight Hundred Thousand Dollars ($4,800,000) (the "Loan Assumption");

(iii) a promissory note in the amount of Three Million Five Hundred Thousand Dollars ($3,500,000), in the form attached hereto as Exhibit A ("Note Consideration");

(iv) cash in the amount of Three Hundred Fifty Thousand Dollars ($350,000) ("Cash Consideration");

(v) six hundred fifty thousand (650,000) shares of CSRV's common stock, par value $.001 per share ("Stock Consideration");

(vi) an option to purchase one hundred thousand (100,000) shares of the CSRV's newly-issued common stock, par value $.001 per share (the "Option") in the form attached hereto as Exhibit "B";

Notwithstanding the foregoing, the Purchase Price shall be reduced, dollar-for-dollar, to the extent that, subsequent to the Closing, the liabilities assumed pursuant to

3

3.3(i) and (ii) exceed $9,000,000.00, and such excess is due to the willful and deliberate effort of Seller to misstate the amount assumed.

3.4    Deliveries by Seller.  At the Closing, Seller shall deliver to the Purchaser the (a) Shares, or duly executed Affidavits of Lost Stock, together with executed stock powers, in blank form for all of the corresponding issued and outstanding capital stock of: American Staff Resources Corporation; Meridian Investment & Management, Inc.; ABP II, Inc.; ABP III, Inc., ABP IV, Inc., StaffAmerica of Delaware, Inc.; and any other entity required to convey all of the Seller's PEO Operations; (b) the Notice of Sale in the form attached hereto as Exhibit C; (c) a current copy of the PEO Operations service agreement with StaffAmerica IT, LLC in the form attached hereto as Exhibit.D; (d) Non-Solicitation and Disclosure Agreements for William L. Baumgardner, Jr., Brian Baumgardner, Anna Baumgardner, Robert J. Phillips, Michael Aldridge, Steve Mills, and Anurag Dandiya in the form attached hereto as Exhibit E.

3.5    Deliveries by Purchaser.  At the Closing, the Purchaser shall deliver to the Seller the Cash Consideration.

3.6    Deliveries in Escrow.  The Seller and the Purchaser agree that the Stock Consideration, Note Consideration together with the Seller's obligations to be assumed by Purchaser pursuant to the Debt Assumption and the Loan Assumption, a consulting agreement on behalf of William L. Baumgardner, Jr. in the form attached hereto as Exhibit F (the "Consulting Agreement"); a strategic marketing alliance agreement with BACE Motorsports in the form attached hereto as Exhibit G (the "Marketing Agreement"); an employment agreement of Brian Baumgardner, in the form attached hereto as Exhibit H; and a consulting agreement with Anna Baumgardner in the form attached hereto as Exhibit I (collectively, the "Deliverables"), shall remain in escrow with Purchaser's counsel until such time as the Seller has delivered the items set forth in Section 3.7 to the Addendum.

3.7    Release Conditions.   The Deliverables shall remain in escrow with Purchaser's counsel and shall incur no obligation, liability or charge on the part of the Purchaser, unless and until, the Seller delivers the following items to the Purchaser:

> (a)    Correspondence from Steven King, Prairie Capital, agreeing to a meeting with W. L. Baumgardner, Jr. and Danny L. Pixler concerning the re-negotiation of the obligation of the holders of those certain promissory notes in the original aggregate amount of $8,000,000 dated May 31, 2002, in connection with the acquisition of American Staff Resources Corporation;

> (b)    Written consent to the transfer of the Shares, from Brentwood Capital Corp., the holder of Loan 1 and Loan 2;

> (c)    Statement from W. L. Baumgardner, Jr. to cooperate fully, on a "best efforts" basis with Danny L. Pixler in securing a line of credit from the Texas Capital Bank;

CURA 0031

## ARTICLE IV

## COOPERATION

Seller shall cooperate fully with Purchaser regarding all other items required to effectuate the transfer of the Shares to provide evidence of ownership by the Purchaser of the Seller's PEO Operations and to transfer the accounts, clients and co-employees associated with the Seller's PEO Operations. Seller shall cooperate in the filing of any and all federal, state and local tax returns.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered as of the date first above written.

BACE INTERNATIONAL, INC.

By: _____
William L. Baumgardner, Jr., President

CERTIFIED SERVICES, INC.

By: _____
Danny L. Pixler, President

THE CURA GROUP II, INC.

By: _____
Danny L. Pixler, President

5

CURA 0032

SCHEDULE 3.4

FINANCIAL STATEMENTS

a.      Audited combined financial statements of ABP II, Inc. and ABP III, Inc. for the fiscal years ended September 30, 2001 and 2002.

b.      Unaudited combined financial statements of ABP IV, Inc. for the period October 1, 2002 through March 31, 2003.

6

CURA 0033

Exhibit A

# PROMISSORY NOTE

$3,500,000.00                                                     June 27, 2003
Charlotte, North Carolina

FOR VALUE RECEIVED, Certified Services, Inc., a Nevada corporation and
The Cura Group II, Inc., a Florida corporation, the makers of this Promissory Note
(collectively, the "Borrower"), hereby covenants and promises to pay to BACE
International, Inc., a North Carolina corporation, ("the Lender"), Three Million Five
Hundred Thousand Dollars ($3,500,000.00), together with interest at the rate of four (4%)
percent per annum, in lawful money of the United States of America, payable in fifty
nine (59) equal monthly installments of Sixty Four Thousand Four Hundred Fifty Seven
Dollars ($64,457.00 USD) each, including principal and interest, computed from June 26,
2003, and to be paid on the first day of August, 2003 and on the first day of every month
thereafter until July 1, 2008 (the "Due Date"), when the remaining principal balance and
all accrued interest and other costs hereunder shall be due and payable in full.

Borrower shall have the right to prepay, without penalty, all or any part of the
unpaid balance of this Note at any time on ten (10) days prior written notice. Borrower
shall not be entitled to re-borrow any prepaid amounts of the principal, interest, costs or
other charges. Borrower covenants that it is duly authorized to enter into this Note. This
is a fully negotiable non-recourse Promissory Note given for Value.

Borrower agrees and covenants that if it fails to make any payment of principal or
interest when due or commits any default under any encumbrance or agreement securing
this Note, unless such failure to timely pay or such default is cured by Borrower within
thirty (30) days, then the whole Note shall become immediately due and payable, and all
principal and accrued interest shall compound at the rate of eight (8%) percent per
annum.

Borrower, and all endorsers, guarantors, sureties, accommodation parties hereof
and all other parties liable or to become liable for all or any part of this indebtedness,
hereof severally and jointly waive presentment for payment, protect diligence, notice of
nonpayment and of protest, and agreement to any extension of time of payment and
partial payments before, at or after maturity. Borrower, endorsers, guarantors, sureties,
accommodation parties hereof, and all other persons liable or to become liable on this
Note agree jointly and severally, to pay all costs of collection, including reasonable
attorneys' fees and all costs of suit, in case the unpaid principal sum of this Note or any
payment of interest or principal and interest thereon or any premium is not paid when
due, or in case it becomes necessary to protect the security for the indebtedness
evidenced hereby, or for the foreclosure by the Holder of any collateral, or in the event
the Holder is made a party to any litigation because of the existence of the indebtedness
evidenced by this Note or because of the existence of any security instrument pledged as
security for the payment of this Note, whether suit be brought or not, and whether

through courts of original jurisdiction, as well as appellate or bankruptcy courts or other legal proceedings.

Borrower agrees and covenants that this Promissory Note and the terms thereof shall be binding upon not only the Borrower, but to any successor of the Borrower as well. The term "successor of the Borrower" shall include any person, corporation, association, joint venture or other entity which at any time, whether by purchase, merger or otherwise, directly or indirectly acquires all or substantially all of the assets or business of the Borrower.

This Promissory Note shall be governed by and construed pursuant to the laws of the State of North Carolina. Any action commenced by a party hereto shall be brought in the General Court of Justice of the State of North Carolina.


THE CURA GROUP II, INC.                    CERTIFIED SERVICES, INC.
(BORROWER)                                 (BORROWER)


By: _____ (SEAL)      By: _____ (SEAL)
Danny L. Pixler, President                 Danny L. Pixler, President

Exhibit B

## CERTIFICATE FOR

## OPTION TO PURCHASE COMMON STOCK

## OF

## CERTIFIED SERVICES, INC.

For good and valuable consideration, Certified Services, Inc. a corporation organized and existing under the laws of the State of Nevada ("Company"), hereby grants to BACE International, Inc. ("Holder"), an option (the "Option") to purchase up to an aggregate of one hundred thousand (100,000) shares of the Company's common stock, par value $.001 per share (the "Shares").

The Option evidenced by this certificate ("Option Certificate") is exercisable in accordance with the provisions set forth below:

1. **Grant of Option.** The Option may be exercised by Holder, in whole or in part, at any time or from time to time if and only if the closing price of the Company's common stock reaches or exceeds the price of $12.00 per share on the NASDAQ OTC Bulletin Board for three (3) consecutive trading days, or other stock exchange on which the Company's common stock is listed. The Option may only be exercised for all of the Shares, by surrender of this Option Certificate, at the offices of the Company during regular business hours, with a bank draft or certified check payable to Company in the full amount of the purchase price of $2.00 per share exercised.

2. **Conditions to Exercise.** The obligations of the Company to issue the Shares to Holder hereunder is subject to the conditions that all consents, approvals, orders or authorizations of the Holder set forth in Section 3.7 of a certain Addendum to the Stock Purchase Agreement dated June 27, 2003 have been obtained or satisfied.

3. **Representations and Warranties of the Company.** The Company represents and warrants that (a) the Company is a corporation duly organized, validly existing and in good standing under the laws of the State of Nevada and has the corporate power and authority to enter into this Option; (b) the Company has taken all action necessary to authorize and reserve for issuance that number of unissued shares that are subject to the Option and upon their issuance, the Shares will be validly issued, fully paid and non-assessable; and (c) upon delivery of the Shares to the Holder, the Holder will acquire the shares free and clear of all liens, claims, charges, encumbrances and security interests of any nature whatsoever except those imposed by the Company.

CURA 0036

Company represents that its common stock is qualified for trading or quotation on a nationally recognized securities exchange or stock quotation system, including, without limitation, the NASDAQ OTC Bulletin Board, and for trading with applicable state authorities.

The Option represented by this Option Certificate has not been registered under the federal Securities Act of 1933, as amended. Unless there is in effect at the time of the exercise of the Option, in whole or in part, a registration statement with respect to the Shares, it is agreed that the Option is being acquired for investment only and not with a view toward distribution or resale, and may not be transferred for consideration. In the absence of such registration statement, any Shares issued upon the exercise of the Option shall bear the following legend:

> "The shares represented by this certificate have not been registered under the Securities Act of 1933, as amended (the "Act") or under the securities laws of any state of the United States. The shares have been acquired without a view toward distribution and may not be offered, sold, pledged, or otherwise transferred in the absence of an effective registration statement for the shares under the Act and under applicable state securities laws or an opinion of counsel of recognized standing, in form and substance satisfactory to the corporation, that such registration is not required. The stock transfer agent has been ordered to effectuate transfers of this certificate only in accordance with the above instructions."

In the event Company shall, at any time prior to the exercise of the Option in full: (i) pay to holders of the common stock of Company a dividend payable in shares of stock; or (ii) change or divide or otherwise reclassify its common stock into the same or a different number of shares with or without par value, or into shares of any other class or classes; or (iii) consolidate or merge with, or transfer its property as an entirety or substantially as an entirety to any other corporation or entity; or (iv) make any distribution of its assets to holders of its common stock as a liquidation or partial liquidation dividend or by way of return of capital; then, upon the subsequent exercise of the Option, Holder shall receive for the exercise price, in addition to or in substitution for the Shares to which Holder would otherwise be entitled upon such exercise, such additional shares of stock or such reclassified shares of stock, or such shares of the securities or property resulting from such consolidation or merger or transfer, or such assets of Company, which Holder would have been entitled to receive had Holder been a shareholder of record as of the date of such occurrence.

4. Miscellaneous. The Option does not confer upon Holder any rights whatsoever as a shareholder of Company. Unless there is in effect at the time of the exercise of the Option, in whole or in part, a registration statement with respect to the Shares, Holder must duly execute the subscription form attached hereto as Attachment "1" and complete the accompanying instructions for issuance of the Shares.

Neither this Option nor the obligations contained herein may be assigned by the Holder without the express written consent of the Company.

**IN WITNESS WHEREOF**, Company and Holder have caused this Certificate to be executed and effective this 27th of June, 2003.

**COMPANY:**                                **HOLDER:**

CERTIFIED SERVICES, INC.          BACE INTERNATIONAL, INC.

By _____        _____
Dan L. Pixler, President                     William L. Baumgardner, Jr., President.

**CURA 0038**

ATTACHMENT "1"

SUBSCRIPTION AGREEMENT

The undersigned hereby subscribes to purchase one hundred thousand (100,000) shares of the common stock of Certified Services, Inc., a corporation organized and existing under the laws of the State of Nevada, for two dollars($2.00) per share, which the undersigned is entitled to purchase under the terms of the Certificate representing the Option surrendered herewith, for a total purchase price of Two Hundred Thousand Dollars ($200,000) in lawful currency of the United States of America, which is delivered herewith, and directs that the shares subscribed be issued as follows:

BACE INTERNATIONAL, INC.

_____

Street Address

_____

City        State    Zip Code

_____

Tax Identification Number

The undersigned acknowledges that the shares subscribed have not been registered under the federal Securities Act of 1933, as amended, and may not be sold, pledged, or otherwise transferred for consideration without an effective registration statement under said Act or an opinion of counsel satisfactory to Company that registration under said Act is not required.

DATED: _____, 20____.

BACE INTERNATIONAL, INC.

By: _____
    William L. Baumgardner, Jr., President

A:\OPTION AGREEMENT.02( ACCEPTED 6-27-03).doc

Exhibit C

## BACE INTERNATIONAL, INC.

June 27, 2003

To Whom It May Concern:

I am pleased to announce that as of today, June 27, 2003, Certified Services, Inc. a Nevada based, publicly traded holding company in conjunction with their existing PEO holdings through The Cura Group II, Inc., a Florida based professional employer organization ("Cura") has formally completed its acquisition of all of the PEO operations of BACE International, Inc. The consolidated companies will serve more than 1,000 clients, with more than 62,000 worksite employees in 42 states.

I have agreed to assist the management team at Certified and Cura in the seamless transition of our PEO Operations to its new ownership and encourage you to offer every courtesy as well.

Sincerely,

William L. Baumgardner, Jr.
President & CEO

CURA 0040

Exhibit D

# *STAFFAMERICA IT SERVICE AGREEMENT(S)*

CURA 0041

Exhibit E

# CONFIDENTIALITY, NON-SOLICITATION AND NON-COMPETITION AGREEMENT

Confidentiality, Non-Solicitation and Non-Competition

AGREEMENT, (the "Agreement") effective as of the date provided below, by and between, _____ (the "Company") and _____ ("Executive").

The Company has consummated a Stock Purchase Agreement pursuant to which the Company will become a subsidiary of The Cura Group II, Inc. (the "Definitive Agreement"). The Company wishes to protect the confidential information of the Company and to protect against the Executive using his skills, knowledge, experience, ideas and influence for the benefit of a competitor of the Company. Executive is willing to enter into an agreement to provide such protection to the Company upon the terms and conditions set forth in this Agreement. In consideration of the foregoing and the mutual agreements herein contained, the, parties agree as follows.

1    CONFIDENTIALITY, NON-COMPETITION.

(a)    Executive acknowledges that: the professional employer organization and staff leasing industry (the "Business") is intensely competitive and Executive's former and current position with the Company has exposed, and will continue to expose, Executive to knowledge of confidential information of the Company; the direct and indirect disclosure of any such confidential information to existing or potential competitors of the Company would do damage, monetary or otherwise, to the Company's Business; and the engaging by Executive in any of the activities prohibited by this Agreement may constitute improper appropriation and/or use of such information. Executive expressly acknowledges confidential information constitutes a protectable business interest of the Company.

(b)    For purposes of this Agreement, the Company shall be construed to include the Company and its current and future subsidiaries and affiliates engaged in the Business.

(c)    From and after the Closing Date (as defined in the Definitive Agreement and the addendum thereto) (the "Effective Time"), Executive shall not, directly or indirectly, whether individually, as a director, stockholder, owner, partner, employee, principal or agent of any business, or in any other capacity, make known, disclose, furnish, make available or utilize any of the confidential information of the Company other than in the proper performance of the duties contemplated herein, or as required by a court of competent jurisdiction or other administrative or legislative body, PROVIDED THAT, prior to disclosing any of the confidential information to a court or other administrative or legislative body, Executive shall promptly notify the Company so that it may seek a protective order or other appropriate remedy. Executive agrees to return all confidential information, including all photocopies, extracts and summaries thereof, and any such information stored electronically on tapes, computer disks or in any other manner to the Company at any time upon request by the Company and upon the termination of his engagement for any reason.

(d)    From the Effective Time until one (1) year following the termination of Executive's performance (the "Non-Competition Period"), Executive shall not engage in Competition (as defined below) with the Company. For purposes of this Agreement, "Competition" by Executive shall mean Executive's engaging in, or otherwise directly or indirectly being employed by or acting as a consultant or lender to, or being a director, officer, employee, principal, licensor, trustee, broker, agent, stockholder, member, owner, joint venturer or partner of, or permitting his name to be used in connection with the activities of any other business or organization which is engaged in the same business as the Business of the Company as the same shall be constituted at any time during or following his engagement; PROVIDED THAT, it shall not be a violation of this Agreement for Executive to (i) become the registered or beneficial owner of less than five percent (5%) of any class of the capital stock of a competing corporation registered

under the Securities Exchange Act of 1934, as amended or (ii) be employed by an entity that engages in the same business as the Business of the Company, so long as Executive does not directly perform services for or work within a division or business unit of such entity that engages in such business.

(e)    Without limiting the generality of the foregoing, during the Non-Competition Period, Executive agrees that he will not, directly or indirectly, for his benefit or for the benefit of any other person, firm or entity, do any of the following:

(i)    solicit from any customer doing business with the Company business of the same or of a similar nature to the Business conducted between the Company and such customer during the term of Executive's employment with the Company;

(ii)    solicit the employment or services of any person who at the time is employed by or a consultant to the Company during the term of Executive's employment with the Company; or

(iii)    make any statements or comments of a defamatory or disparaging nature to third parties regarding the Company or its officers, directors, personnel, products or services

(f)    Executive acknowledges that this Agreement is being entered into in connection with the consummation of the transactions contemplated by the Definitive Agreement, that Executive's agreement to the terms set forth herein is a critical inducement to the entering into the Definitive Agreement by the parties thereto, that the services to be rendered by Executive to the Company are of a special and unique character, which gives this Agreement a particular value to the Company, the loss of which may not be reasonably or adequately compensated for by damages in an action at law, and that a material breach by Executive of any of the provisions contained herein will cause the Company irreparable injury. Executive therefore agrees that the Company

CURA 0044

shall be entitled, in addition to any other right or remedy, to a temporary, preliminary and permanent injunction, without the necessity of proving the inadequacy of monetary damages or the posting of any bond or security, enjoining or restraining Executive from any such violation.

      (g)    Executive further acknowledges and agrees that due to the uniqueness of his services and confidential nature of the information Executive will possess, the covenants set forth herein are reasonable and necessary for the protection of the business and goodwill of the Company; and it is the intent of the parties hereto that if in the opinion of any court of competent jurisdiction any provision set forth in this Agreement is not reasonable in any respect, such court shall have the right, power and authority to modify any and all such provisions as to such court shall appear not unreasonable and to enforce the remainder of this Agreement as so modified.

2.    ENTIRE AGREEMENT. This Agreement sets forth the entire agreement between the parties with respect to its subject matter and merges and supersedes all prior discussions, agreements and understandings of every kind and nature between any of them and neither party shall be bound by any term or condition other than as expressly set forth or provided for in this Agreement. This Agreement may not be changed or modified nor may any of its provisions be waived, except by an agreement in writing, signed by the parties hereto.

3.    INDEMNIFICATION. Anything in this Agreement to the contrary notwithstanding, the Company agrees to pay all costs and expenses incurred by Executive in connection with the enforcement of his rights and entitlements under this Agreement and will indemnify and hold harmless Executive from and against any damages, liabilities and expenses (including without limitation fees and expenses of counsel) incurred by Executive in connection with any litigation or threatened litigation, including any regulatory proceedings arising out of the making of this Agreement or the enforcement of Executive's rights under this Agreement.

CURA 0045

4.      WAIVER. The failure of any party to this Agreement to enforce any of its terms, provisions or covenants shall not be construed as a waiver of the same or of the right of such party to enforce the same. Waiver by any party hereto of any breach or default by any other party of any term or provision of this Agreement shall not operate as a waiver of any other breach or default.

5.      SEVERABILITY. In the event that any one or more of the provisions of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remainder of the Agreement shall not in any way be affected or impaired thereby. Moreover, if any one or more of the provisions contained in this Agreement shall be held to be excessively broad as to duration, activity or subject, such provisions shall be construed by limiting and reducing them so as to be enforceable to the maximum extent allowed by applicable law.

6.    NOTICES. Any notice given hereunder shall be in writing and shall be deemed to have been given when delivered by messenger or courier service (against appropriate receipt), or mailed by registered or certified mail (return receipt requested), addressed as follows.

If to the Company:


If to Executive:


with a copy to:


or at such other address as shall be indicated to either party in writing. Notice of change of address shall be effective only upon receipt.

CURA 0046

7.    GOVERNING LAW. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida without regard to conflicts of law principles.

8.    DESCRIPTIVE HEADINGS. The section headings contained herein are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

9.    COUNTERPARTS. This Agreement may be executed in counterparts, each of which shall be deemed an original for all purposes but which, together, shall constitute one and the same instrument.

10.    AMENDMENT. This Agreement may be amended only by a written agreement signed by the Company and Executive.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Time.

_____

By_____
Name:
Title:

_____

O:\CERTIFIED SERVICES, INC\StaffAmerica Acquisition\Non-Compete Agreements 6-26-03.doc.

Exhibit F

## CONSULTING AGREEMENT

This Consulting Agreement (this "Agreement") is entered into as of June 27, 2003, by and between CERTIFIED SERVICES, INC., a Nevada corporation, whose principal office is located at 477 Madison Avenue, New York, New York ("Company"), and WILLIAM L. BAUMGARDNER, JR. with an address at 6000 Fairview, Suite 1550, Charlotte, North Carolina ("Consultant").

### Recitals

WHEREAS, Company desires to retain Consultant as an independent contractor to the Company's executive committee and to provide certain consulting, advisory, business planning and development services to the Company, its subsidiaries and affiliates, including the development of an "exit strategy" (the "Services").

WHEREAS, Consultant wants to accept such position and act as an independent contractor in performing the Services.

NOW, THEREFORE, in consideration of the mutual covenants referred to herein, the parties agree as follows:

### Agreement

1.    Retention.  Company hereby retains Consultant to perform, and Consultant hereby agrees to perform, the Services upon the terms and conditions of this Agreement.

2.    Term.  The term of this Agreement shall commence on the date first set forth above and continue for a period of four (4) years thereafter, unless earlier terminated as set forth herein.

3.    Compensation.  In consideration of the performance of the Services, the Company shall pay to consultant the sum of Two Hundred Fifty Thousand Dollars ($250,000) per annum in monthly payments of Twenty Thousand Eight Hundred Thirty Three Dollars ($20,833) (the "Compensation").

4.    Duties.  Consultant shall act as an independent contractor and to provide the Services at the request of the Company, but at such reasonable times and in such reasonable manner as may be mutually agreed upon between Company and Consultant.  Consultant shall perform the Services for Company independently, but in compliance with professional standards generally applied in the industry and reasonable policies established by Company.

5.    Non-Compete: Non-Disclosure.

(a) Non-Compete.  During the period of time Consultant is contracted by the Company, Consultant will not directly or indirectly, own, manage, operate, join, control, or participate in the ownership, management, operation or control of, or be employed by or connected in any

manner with, any business engaged anywhere in the United States of America in the professional employer or employee leasing business.

(b) Non-Disclosure. Consultant shall hold in the strictest confidence, and shall not, directly or indirectly, disclose, divulge, reveal, report, publish, transfer or otherwise communicate or use any Confidential Information to the detriment of the Company.

(c) Injunctive Relief and Termination. Any breach or threatened breach by Consultant of any of the provisions of paragraphs (a) or (b) hereof, the Company shall be entitled to a temporary restraining order, preliminary injunction and permanent injunction in order to prevent or restrain any such breach or threatened breach by Consultant, or by any or all of Consultant's agents, representatives or other persons directly or indirectly acting for, on behalf of or with Consultant.

6    Independent Contractor. Consultant and Company hereby acknowledge that Consultant is an independent contractor.

7.    Termination. The Company may terminate this Agreement at any time for "cause", which shall be defined as: conviction of a crime involving moral turpitude. The Consultant may terminate this Agreement at any time upon failure of the Company to perform any of the material terms of this Agreement. However, it is mutually agreed by all parties that if this Agreement is terminated for any reason, other than "cause", then the difference between the amount paid under this Agreement and One Million Dollars ($1,000,000.00 USD) shall immediately, and without offset, be paid to Consultant.

8.    Assignment. Neither Company nor Consultant shall assign any rights or delegate any duties under this Agreement, except with the other's prior written consent, which consent will not be unreasonably withheld.

9.    Severability. If any provision of this Agreement shall be invalid or unenforceable in any respect for any reason, the validity and enforceability of any such provision in any other respect and of the remaining provisions of this Agreement shall not be in any way impaired.

10.    Successors and Assigns. This Agreement shall be binding upon Company and Consultant and their successors and assigns.

11.    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina.

12.    Venue. If any suit or action is filed by any party to enforce this Agreement or otherwise with respect to the subject matter of this Agreement, venue shall be in the state courts in North Carolina.

13.    Amendments. This Agreement may be amended only by an instrument in writing executed by all of the parties

**CURA 0049**

14.    Counterparts.  This Agreement may be executed in counterpart copies, each of which will be deemed an original, but constituting a single agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed on the day and year first written above.

COMPANY:                                      CONSULTANT:

CERTIFIED SERVICES, INC.

By: _____              _____
     DANNY L. PIXLER, PRESIDENT           WILLIAM L. BAUMGARDNER, JR.

3

CURA 0050

Exhibit G

# STRATEGIC MARKETING ALLIANCE AGREEMENT

This marketing agreement to represent the $900,000.00 payment to BACE Motorsports over the next twelve months in equal monthly payments. The Agreement is non-cancellable (irrevocable) and should BACE discontinue to compete in motorsports, will inure to the benefit of BACE International.

This Agreement is to be prepared by WLB, in a format similar to our previous practices with associate sponsors, will provide for attendance credentials & "hot passes" for attendees but will not be represented by an signage or decal space on the racecar(s). No liability insurance coverage(s) or physical injury indemnification(s) will be contained in the Agreement. Normal team member indemnity agreements will apply.

The fee of $900,000.00 to be paid to BACE Motorsports will be paid in twelve equally monthly installments of $75,000.00, commencing August 1, 2003 and shall continue on the first of each month for twelve consecutive months.

CURA 0051

<u>STOCK PURCHASE AGREEMENT</u>

THIS STOCK PURCHASE AGREEMENT (this "<u>Agreement</u>") is made as of the 31st day of October 2002, by and between BACE International, Inc., a North Carolina corporation, ( the "<u>Seller</u>") and The Cura Group III, Inc., a Florida corporation ("<u>Purchaser</u>"). Certain capitalized terms used herein are defined in <u>Article I</u>.

## W I T N E S S E T H:

WHEREAS, Seller is in the business of providing professional employee, staffing, payroll and other services; and

WHEREAS, Seller executed a Loan Agreement in the amount of $3,600,000 on August 30, 2002 in order to extend its Workers' Compensation insurance policy for an additional thirty days ("LOC1");

WHEREAS, Seller executed an additional Loan Agreement in the amount of $3,600,000 on September 30, 2002 in order to extend its Workers' Compensation insurance policy for an additional thirty days ("LOC2");

WHEREAS, Seller requires an additional $1,530,000 for paid loss capital in order to continue its Workers' Compensation insurance policy for an additional sixty days ("LOC3");

WHEREAS, Seller is a licensed professional employer organization ("PEO") in the State of North Carolina operating as StaffAmerica, Inc. ("StaffAmerica");

WHEREAS, Purchaser wishes to buy and Seller wishes to sell all of the issued and outstanding shares of StaffAmerica;

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants, agreements and warranties herein contained, and for good and valuable consideration, the sufficiency of which are hereby acknowledged, the parties agree as follows:

## ARTICLE I

## DEFINITIONS

1.1 <u>Definitions</u>. The following terms shall have the following meanings for the purposes of this Agreement:

"<u>Affiliate</u>" means, with respect to any specified Person, any other Person which, directly or indirectly, controls, is under common control with, or is controlled by, such specified Person.

CURA 0052

Exhibit H

# *EMPLOYMENT AGREEMENT(S)*

Brian J. Baumgardner

**CURA 0053**

Exhibit I

# CONSULTING AGREEMENT

Anna K. Baumgardner

CURA 0054

## OFFICER'S CERTIFICATE
## RE: TAXES AND GOOD STANDING

The undersigned hereby certifies that he is the duly elected, qualified and acting President of BACE International, Inc., a North Carolina corporation (the "Company"); that, to the best of his knowledge as President, as of the date of this Certificate, the Company is in good standing under the laws of the State of North Carolina; and that, to the best of his knowledge as President, the Company has filed all tax returns and related reports due as of the date hereof in each of the jurisdictions where such returns and reports are required and that all taxes which are due from the Company have been paid in full, and the Company does not have any tax deficiency or claim outstanding, proposed or assessed against it.

IN WITNESS WHEREOF, the undersigned has executed this certificate and affixed the corporate seal hereto as of the 27th day of June, 2003.

William L. Baumgardner, Jr., President

CURA 0055

## OFFICER'S CERTIFICATE

The undersigned, hereby certify that they are the duly elected, qualified and acting President and Secretary of BACE International, Inc., a North Carolina corporation (the "Company"), that, to the best of each of their knowledge in their capacity as President and Secretary, respectively, each and every representation and warranty of the Company enumerated in Article III and elsewhere in the Stock Purchase Agreement among the Company and The Cura Group III, Inc., a Florida corporation, (the "Purchase Agreement"), and the Addendum to the Stock Purchase Agreement dated June 27, 2003 (the "Addendum") which are hereby incorporated herein by reference, are true and correct with the same force and effect as though expressly made as of the date hereof except those that are expressly given as of a specific date or as of the date of the Purchase Agreement and the Addendum.

**IN WITNESS WHEREOF,** the undersigned have executed this Certificate and affixed the corporate seal hereto as of the 27th day of June, 2003.

William L. Baumgardner, Jr., President

Brian J. Baumgardner, Secretary

## SHAREHOLDERS CERTIFICATE

The undersigned, being the sole shareholder (the "Shareholder") of BACE International, Inc., a North Carolina corporation (the "Seller"), hereby certifies that, to the best of his knowledge, each and every representation and warranty of the Shareholder enumerated in Article III and elsewhere in a Stock Purchase Agreement between The Cura Group III, Inc., a Florida corporation, and the Seller dated October 31, 2002 (the "Purchase Agreement") and the Addendum to the Stock Purchase Agreement Dated June 27, 2003 (the "Addendum"), which are hereby incorporated herein by reference, are true and correct with the same force and effect as though expressly made as of the date hereof except those that are expressly given as of a specific date or as of the date of the Purchase Agreement and the Addendum.

IN WITNESS WHEREOF, the undersigned has executed this Certificate and affixed the corporate seal hereto as of the 27th day of June, 2003.

WILLIAM L. BAUMGARDNER, JR.

**CURA 0057**

## STOCK CERTIFICATES DELIVERY

The undersigned commits to deliver or cause to be delivered by Tuesday, July 1, 2003, the fully executed stock certificates to convey the PEO interests being transferred under this transaction.

WILLIAM L. BAUMGARDNER, JR.

CURA 0058



MIDWEST MERGER MANAGEMENT, LLC
10802 TIMBERWOOD CIRCLE, STE 9
LOUISVILLE, KY 40223

2236

21-5/830 33

DATE 6-22-2001

PAY TO THE ORDER OF _BRCE International_                              $ 350,000 00

_Three hundred and Fifty Thousand dollars_                          DOLLARS

National City.
National City Bank of Kentucky
Louisville, Kentucky

FOR _STRCE International / ADR corp_

⑆002236⑆  ⑆083000056⑆  75403750 4⑆